**Affirmed and Memorandum Opinion filed April 27, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00155-CR

---

## DONTRAE CAMPBELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1605716**

---

## MEMORANDUM OPINION

In this appeal from a conviction for aggravated robbery, appellant argues that the judgment must be reversed because the evidence is legally insufficient, or alternatively, because the trial court abused its discretion by admitting evidence of an extraneous offense. For the reasons given below, we overrule both of these arguments and affirm the trial court's judgment.

# BACKGROUND

The aggravated robbery in this case occurred late one night at a taco truck. As an employee of the taco truck was preparing to close up for the evening, he noticed that a white Dodge Ram had recently parked behind him. The employee went outside to investigate the Ram, which had spiked lug nuts. When no one exited the Ram, the employee returned to the taco truck.

Soon after reentering the taco truck, the employee noticed that a man had followed him inside. The man was African American, short, and young, in his early to mid-twenties. He was also wearing a black sweatshirt with a brown bandana wrapped around his face. The man pointed a gun and demanded all of the money in the cash register. The man passed a paper bag for collecting the money, but the bag fell to the ground, and when the man bent over to pick it up, the bandana briefly slipped off of his face.

The employee turned over all of his money, which he estimated was between $800 and $900. The man then fled the scene in the Ram.

The employee's coworker called the police, and she gave a description of the Ram, including its location. That information was dispatched over the radio and heard by a tow truck driver with a police scanner. The tow truck driver was in the vicinity of the offense, and when he saw a Ram matching the description of the suspect vehicle, he decided to follow it.

Perhaps noticing that the tow truck driver was tailing him, the driver of the Ram sped up and began taking an erratic path, heading eastbound first, then westbound, and finally eastbound again. The tow truck driver called police and gave his whereabouts. Marked units then began their pursuit.

One police officer pulled up behind the Ram and noticed that the driver was making unusual movements inside the cabin, as though the driver were changing his clothes. The Ram was eventually pulled over, and appellant was identified as the driver and sole occupant.

Appellant matched the physical description of the robber, though he was shirtless at the time of the stop. Inside appellant's Ram, officers found a black sweatshirt, a brown bandana, a paper bag, and $881 in cash. Officers did not find a gun. Appellant told the officers that the money was his, and that he had recently cashed a paycheck at an ATM.

Officers escorted appellant back to the taco truck, where they towed the Ram as well. The employee of the taco truck said that he was 50–60% sure that appellant was the person who robbed him. The employee further opined that he was 100% sure that the Ram, with its distinctive spiked lug nuts, was the same truck that had been used by the robber. The employee's coworker was not asked to make an out-of-court identification.

Based on the foregoing, appellant was arrested and charged with aggravated robbery. He pleaded not guilty to that charge, and his case proceeded to a trial by jury.

Appellant did not testify in his own defense, but his counsel challenged the strength of the prosecution's case. Counsel argued that the employee's uncertain identification of appellant created a reasonable doubt. Counsel also emphasized that a gun was never found in appellant's truck, that the tow truck driver never witnessed appellant dispose of a gun, and that the prosecution never attempted to collect fingerprints from the taco truck, even though there was no indication that the robber had worn any gloves.

3

The jury rejected these defensive theories and convicted appellant as charged.

## SUFFICIENCY OF THE EVIDENCE

In a sufficiency challenge, a reviewing court must determine whether a rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The offense here was aggravated robbery, which meant that the prosecution had the burden of proving that appellant, while in the course of committing a theft and with the intent to obtain or maintain control of the property, intentionally or knowingly threatened or placed the employee of the taco truck in fear of imminent bodily injury or death, and that appellant used or exhibited a deadly weapon. *See* Tex. Penal Code § 29.03(a)(2).

Appellant does not dispute that the prosecution produced legally sufficient evidence that an aggravated robbery occurred. However, he does dispute whether the prosecution proved that he was the person who committed the aggravated robbery. We accordingly limit our sufficiency review to just the essential element of identity. *See* Tex. R. App. P. 47.1 (providing that the reviewing court must address "every issue raised and necessary to final disposition of the appeal"); *Burks v. State*, No. PD-0992-15, 2017 WL 3443982 (Tex. Crim. App. June 28, 2017) (per curiam) (op. on reh'g) (not designated for publication) (holding that a reviewing court should not address unbriefed elements in a sufficiency challenge because an analysis of those elements is not necessary to final disposition of the appeal). In deciding whether that element was proved, we consider all of the evidence in the light most favorable to the verdict. *See Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018).

There was direct evidence of identity in this case. The coworker who called the police testified in open court that appellant was the person who committed the aggravated robbery.

In addition to that direct evidence, there was circumstantial evidence of identity. The employee of the taco truck gave a physical description of the robber and his truck. All of those descriptions were consistent with appellant and his Ram. Like the robber, appellant was a short, African-American male in his early to mid-twenties, and he was found in the possession of a black sweatshirt, a brown bandana, and a white Ram with distinctive lug nuts.

Appellant was also found in the possession of a large amount of cash. Appellant told an officer that this cash was withdrawn from an ATM, but many of the bills were in small denominations. The jury could have reasonably concluded that those smaller bills came from a cash business like a taco truck, rather than from an ATM.

Viewing all of this evidence in the light most favorable to the verdict, we conclude that there was legally sufficient to support the jury's finding beyond a reasonable doubt that appellant was the person who committed the aggravated robbery.

## EXTRANEOUS OFFENSE EVIDENCE

The details of appellant's arrest were forwarded to a detective who was investigating another aggravated robbery that had been committed two days before the charged offense. The detective noticed several similarities between the two aggravated robberies. Both occurred at taco trucks, late at night, and in the same general vicinity. Also, both aggravated robberies were committed by a short, African-American male, in his early to mid-twenties, who acted by himself, wore a

bandana, and exhibited a gun. Furthermore, the robber in each case fled the scene in a white Dodge pickup truck with spiked lug nuts.

Suspecting that appellant was responsible for the earlier aggravated robbery as well, the detective created a photo array with appellant's picture and enlisted another officer to show it to the extraneous complainant. The extraneous complainant identified appellant in the photo array and expressed 100% confidence that appellant was the person who had robbed him.

Near the end of its case-in-chief, the prosecution sought to introduce evidence of this extraneous offense, arguing that it was admissible because defense counsel had challenged the element of identity in her opening statement and through her cross-examination. The trial court heard the evidence outside the presence of the jury and determined that it was "distinctive," "oddly idiosyncratic," and "almost parallel to the case in chief." The trial court accordingly ruled that the evidence was admissible. Appellant now challenges this ruling, which we review for an abuse of discretion. *See Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

Evidence of an extraneous offense is not admissible if the purpose of the evidence is to show that a person has a character trait and that, on a particular occasion, the person acted in conformity with that character trait. *See* Tex. R. Evid. 404(b)(1). But such evidence may be admitted if it tends to prove an elemental fact (like intent, knowledge, or identity); if it tends to establish an evidentiary fact (like motive, opportunity, preparation, or plan) that inferentially leads to an elemental fact; or if it tends to rebut a defensive theory (like the absence of mistake or lack of accident). *See* Tex. R. Evid. 404(b)(2). When the evidence advances one of these purposes, it has relevance beyond its tendency to show character conformity, and therefore, it is probative and admissible. *See Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g).

6

When, as here, the extraneous offense is introduced to prove identity by comparing common characteristics, the evidence must be so similar to the charged offense that the offenses illustrate the defendant's "distinctive and idiosyncratic manner of committing criminal acts." *See Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). Such evidence is admissible to prove identity when the common characteristics of each offense are so unusual as to act as the defendant's "signature." *Id.* The signature must be apparent from a comparison of the circumstances of both cases. *Id.*

Appellant asserts, without much analysis, that the extraneous offense is not sufficiently similar to the charged offense. We believe that the trial court was free to make the opposite conclusion.

The evidence at the hearing established that the two offenses were committed late at night, roughly forty-eight hours apart, and less than three miles from each other. The robber in each offense targeted the same type of business, a taco truck. Each robber was described by witnesses as being short, African American, and in his early to mid-twenties. Witnesses also said that the robber acted alone, wore a bandana, and fled the scene in a distinctive white pickup truck with spiked lug nuts. On these facts, we cannot say that the trial court acted outside the zone of reasonable disagreement when it found that the circumstances of the extraneous offense were "distinctive," "oddly idiosyncratic," and "almost parallel to the case in chief." *Cf. Burton v. State*, 230 S.W.3d 846, 850–51 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding that evidence of extraneous bank robberies was admissible because the extraneous robber's physical description and modus operandi were very similar to those of the robber in the charged bank robbery); *see also Dickson v. State*, 246 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (noting that sufficient similarity may be shown by proximity in time and place or by a common

mode of committing the offenses). We likewise conclude that the evidence was probative and admissible.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).